### BAGGETT & BARCUS et al. v. STATE.
### No. 3254.

Court of Civil Appeals of Texas. El Paso.
July 11, 1935.

Life & Moseley, of Athens, for appellants.

William McCraw, Atty. Gen., and Archie D. Gray and Tom D. Rowell, Jr., Asst. Attys. Gen., for the State.

PELPHREY, Chief Justice.

This suit was filed by the state of Texas and the Railroad Commission seeking to recover penalties for the violation of certain rules and regulations of the Railroad Commission from Baggett & Barcus, a copartnership, and G. Baggett, Albert Baggett, J. R. Barcus, and Jerry Adams, individually. Numerous violations were charged in the petition of appellee, but upon trial the evidence was confined to those relative to the operation in connection with the well of defendants of what is commonly known and referred to as a "by-pass."

The allegations were:

"V. Acting in further pursuance of such statutory duty and authority, the Railroad Commission of Texas, did on February 15, 1933, pursuant to hearing duly and legally held, after notice as required by law, pass and promulgate certain orders in regard to said East Texas Oil Field, wherein it was provided that all oil wells in said field should be effectively gauged; that certain reports should be made, both in regard to production, delivery and transportation, each month showing the amount of oil produced from each oil well; and that all pipe line companies should have effective gauges, so as to show the amount of oil received, transported or delivered by it. That said defendants well knew the contents and import of said orders of February 15, 1933, and reference is here made to all of the same and the same are here incorporated as fully as if written herein. It is further alleged that by article 6034

of the 1925 Revised Civil Statutes, all operators of oil wells are required to furnish a report each month to the Railroad Commission, showing the amount of oil produced, which defendants have failed and refused to do. Said defendants have further at all times failed and refused to make reports to said Commission showing the amount of oil produced by them, as is required by said orders of the Commission.

"VI. Said Railroad Commission has ordered that all oil produced should be first measured by being run directly from the well from which it is produced into lease tanks for gauging, and that the same should there be gauged by the producer and a record thereof kept and used as the basis for such production reports as are required to be made to the Railroad Commission of Texas; that said lease tanks should be located on the lease on which the oil well whose oil is being measured and run is located, or an adjoining lease; that one tank or tank battery only should be used in the measurement of oil from any well or group of wells located on each lease; that all flow lines through which oil is delivered by the producer should be connected directly to the flow or lease tanks for gauging the oil as is required by said order. That such order is and was a valid order, the terms of which are well known to the defendants and all of its provisions are universally known in the East Texas Oil Field. The same is here referred to and adopted and incorporated, as fully so as if entered herein."

"XI. Plaintiffs would further show unto the court that on the 16th day of November, A. D. 1933, and for a long period of time prior thereto, the exact amount of which is unknown to plaintiffs, defendants produced or caused to be produced many thousands of barrels of crude petroleum oil from said one well on the Rosson Lease, Johnson Survey, Gregg County, Texas, without accounting to the royalty owners for such oil so produced. That these enormous amounts of crude petroleum oil produced from said well were produced in open and flagrant violation of House Bill 844, chapter 165, Acts of the Forty-Third Legislature, Regular Session, 1933 [see Vernon's Ann. P. C. art. 1112b] in that defendants and those operating the well for them, caused the well to be flowed through a system of pipes and connections which did not and does not carry the oil directly from the well as same is produced to the storage or stock tanks on said lease, but

by the system of pipes and connections hereinabove mentioned, defendants and those operating said well for them, divert the oil produced in and around said stock tanks and the separator therefor thereby causing same to flow from the well direct into a pipe line from the said Rosson Lease, which carries the oil off from the lease, and the defendants and each of them thereby lose possession of same without such oil having first been run from the well to the separator and stock tanks on the lease. That the destination of the oil as flowed through the pipe line which leads from the Rosson Lease is unknown to plaintiffs, but well known to defendants, and although plaintiffs have on many occasions attempted to ascertain the destination of such oil, they have hitherto failed, and those operating the well for the defendants have hitherto failed and refused to divulge the destination of such oil. That such pipe line leading direct from the well to a point beyond the bounds of the lease owned by the defendants herein without ever permitting the oil produced from such well to pass through the storage or stock tanks of said lease for the purpose of being there gauged, constitutes a bypass and is, in fact, bypassing the lease stock tanks and constitutes a wilful and flagrant violation of the penal laws of this State, as hereinabove alleged. * * * That on the dates of November 25th, and 26th, and December 5th, 11th, 24th, 25th, 29th and 31st A. D. 1933, the defendants flowed said well, using the means, methods and devices as hereinabove alleged to divert the oil from said well off of said lease without first having same gauged or without running same into the lease stock tanks, and permitting same to remain there for the purpose of being gauged. That on December 5th, A. D. 1933, defendants again caused said well to be operated in the manner as hereinabove alleged, thereby making it impossible for the agents and employees of the Railroad Commission of Texas to effectively gauge in any manner the oil produced from said well. Plaintiffs would further show that each and all of the above violations of not only the laws of the State of Texas, but the valid rules, regulations and orders of the Railroad Commission of Texas, were done with full knowledge of the issuance of the injunction above mentioned by the Special District Court of Gregg County, Texas."

"XIII. Plaintiffs would show to the Court that by reason of the illegal pro-

duction of oil from said well by defendants, and the production of oil in large quantities greatly in excess of that amount which can be lawfully produced, defendants and each of them, have become indebted to the State of Texas in a large amount of money for gross production tax, the exact amount of which is unknown to plaintiffs, but plaintiffs allege and aver that said amount is greatly in excess of One Thousand Dollars ($1,000.00). That by such illegal production of oil, the defendants and each of them fail to account to the Comptroller of Public accounts of Texas for such oil produced in violation of the laws of the State of Texas and the valid rules, regulations and orders of the Railroad Commission of Texas.

"XIV. Plaintiffs would further show to the Court that the Statutes of the State of Texas provide for a penalty of not more than One Thousand Dollars ($1,000.00) per day for each and every day of violation of the orders, rules and regulations of the Railroad Commission of Texas, and that on account of the violation of said orders by the defendants as aforesaid, they have subjected themselves to such penalties, for which the State sues herein, in addition to the other relief sought. And in this connection plaintiffs would show to the Court that they have a valid and subsisting lien for and in behalf of the State of Texas upon all of the property of the defendants within this State or to come within this State, to secure payment of such debt and penalties as herein sued for, and to secure the payment of the gross production tax herein sued for, and that by reason of the unlawful production of crude petroleum oil by said defendants and each of them, continuously since November 16, A. D. 1933, defendants and each of them have become indebted to the State of Texas in the sum of One Thousand Dollars ($1,-000.00) per day for each and every day that they have violated the valid rules, regulations and orders of the Railroad Commission of Texas, to-wit: In the sum of Fifty-One Thousand Dollars ($51,000.-00)."

Upon a trial before the court judgment was rendered in favor of the state of Texas and against Albert Baggett and Dr. J. R. Barcus, partners, doing business as Baggett & Barcus, and Albert Baggett and J. R. Barcus, individually, jointly and severally for $25,500, with interest thereon from November 2, 1934.

The copartnership of Baggett & Barcus, as well as Baggett and Barcus individually, have appealed.

## Opinion.

While numerous questions are presented by appellants in their brief, we shall first discuss the propositions questioning the sufficiency of the evidence to support the judgment. Bearing in mind that strictness of pleading and proof are required in actions to recover penalties, Hedgepeth v. Hamilton Warehouse Co., 104 Tex. 496, 40 S. W. 1084, we have reached the conclusion that the evidence adduced here is insufficient to connect the appellants with the operation of the lease in question.

It is true, as claimed by appellees, that there is evidence to the effect that the well was generally known as the Baggett & Barcus well; that different persons found on the lease claimed to be working for Baggett & Barcus; that Dr. Barcus on one occasion denied that there was a by-pass on the lease; and that Guy Baggett had told a witness that he had sold his interest to Albert Baggett.

Incompetent evidence, though admitted without objection, will not be considered by a reviewing court in determining the sufficiency of the evidence to support the judgment. 3 Tex. Jur. § 721, p. 1016, and authorities cited.

It clearly appears that the facts above enumerated were based upon hearsay testimony and, therefore, incompetent.

The pleading above quoted, we think, was sufficiently specific, but in view of the fact that the cause must be remanded we shall not pass upon that question. We cannot agree that the state could not delegate the powers here attempted to be exercised to the commission.

Other objections made to the orders are, we think, without merit.

Because the evidence is not sufficiently specific to support a judgment in this character of a proceeding, the judgment will be reversed and the cause remanded.